**IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | NO. 15CR30036-MGM |
| | ) | |
| BIENVENIDO NUNEZ | ) | |

**BIENVENEDO NUNEZ' SENTENCING MEMORANDUM**

Bienvenido Nunez ("Bienvenido"), through counsel, files the instant sentencing memorandum in support of a sentence below the advisory guideline range. Bienvenido respectfully requests that this Honorable Court exercise its discretion to adopt the agreed upon sentence recommendation and impose a sentence "sufficient, but not greater than necessary" to achieve the sentencing purposes of 18 U.S.C. §3553(a).

I.  **BACKGROUND**

Since 2013 Bienvenido was living with Damaris Arocho at 1089 Worthington Street, Apartment 3A in Springfield, MA with their two children, ages 9 and 8. Damaris has three children from a previous relationship (ages 12, 18 and 15). Bienvenido was a member if the Latin Kings. Bienvenido was a member in New Jersey and was convinced, at that time, that the Latin Kings were a positive organization that would benefit him as they tried to benefit their community. He turned out to completely wrong and Bienvenido tried to constantly distance himself from the Latin Kings. He was even criticized for not participating in

1

"King" activities. Despite this Bienvenido did associate with other Latin King members in this area. On or about August 4, 2015 a friend and fellow Latin King member asked Bienvenido to procure ½ ounce of cocaine for him. Knowing what he was doing and knowing it was wrong Bienvenido was going to sell that friend 14 grams of cocaine. As an example of his ineptness Bienvenido ended up losing ½ of the intended product prior to the sale and sold 7 grams of cocaine to his fellow Latin King member. Bienvenido was arrested at his home on November 9, 2015. Subsequent to his arrest Bienvenido volunteered and showed law enforcement officers the location of a firearm he possessed inside the residence. The firearm was not known to anyone else in the residence and was not accessible by anyone other than him.

Bienvenido readily admits that he was a member of the Latin Kings. Since his incarceration Bienvenido successfully completed the SRG Program at the Wyatt Detention Facility in January 2016. (See, Certificate of Completion, SRG Program, Dated: January 2016) He has renounced his involvement with them. During his detention Bienvenido was given the privilege of working in their kitchen facility and has maintained a positive and productive attitude while incarcerated. He is well thought of by the staff at Wyatt as evidenced by the letter attached from his Unit Manager at Wyatt. (See, Letter Dated June 29, 2016 from Susan Devonis, Wyatt Detention Facility)

From the very beginning of this case Bienvenido accepted responsibility for his wrongdoing and is very remorseful for his conduct. He knows that his actions have caused tremendous harm. He is deeply sorry for his actions and looks forward to expressing remorse at this hearing. He recognizes that his actions are the result of his own conduct. He initially believed that he was assisting his friend but was well aware that what he did was wrong. He

does not offer this explanation as an excuse, but only to show that he his actions were motivated by something in him that defied logic.

He has been extremely fortunate to have the continued support of his girlfriend and the mother of his children. Bienvenido is very fortunate in having a supportive family. Bienvenido has enjoyed regular visits at Wyatt with his children. (See, Letters in Support of Bienvenido). He has had the difficult conversation with his children about what he has done; that their father made some huge mistakes and must now pay for them. They understand that he will not be with them physically until he completes his sentence. They remain supportive. Although their relationship is somewhat non-traditional it is nevertheless important and has evolved to where Bienvenido has all the support they have to offer. Bienvenido hopes to make all possible efforts to survive his punishment and spend the future working and supporting his family. His goals are simple. He wants to reunite with his family. He wants to get a job in order to provide the support and stability that will be required to keep his family together. These, to some, are not lofty goals but they should not be discounted. Bienvenido will face many challenges upon his release and during his supervised probation. Although the road may be difficult and not without its setbacks Bienvenido is determined to be the father and the support person his family needs.

## II.  LAW AND ARGUMENT

The defendant respectfully asks the Court to impose a sentence of 18 months of incarceration and a three year period of supervised release as outlined in the plea agreement. In seeking a sentence below the applicable advisory guideline range sentence the defendant notes that the United States Sentencing Guidelines, as promulgated by the United States

Sentencing Commission, no longer bind federal courts. *United States v. Booker, 543 U.S. 220, 259 (2005)*. Indeed, the United States Supreme Court's landmark *Booker* decision declared the mandatory provisions of the USSG unconstitutional. *Id. Booker*, however, reaffirmed a sentencing court's duty to sentence a defendant in accordance with those provisions of the Sentencing Reform Act specified in 18 U.S.C. §3553(a).

The §3553(a) factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant, (2) the need for the sentence to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment, to afford adequate deterrence, to protect the public, and to provide the defendant with needed educational or vocational training or medical care, (3) the kinds of sentences available, (4) the kinds of sentence and the sentencing range established by the United States Sentencing Guidelines, (5) any pertinent policy statement, (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct, and (7) the need to provide restitution to any victim of the offense. *United States v. Robinson, 433 F.3d 31, 35 (1st Cir. 2005)*. The district court, while not bound by the guidelines, still must consult and consider them when imposing a sentence. *Booker, 543 U.S. at 264*. Courts of appeals cannot disturb a district court's sentence unless the appellate court finds that sentence unreasonable. See *Id*. The United States Supreme Court clarified post-*Booker* sentencing procedure in *Gall v. United States, 128 S. Ct. 586 (2007)* where the *Gall* Court indicated that when sentencing a defendant,

> [A] district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range. As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark. The Guidelines are not the only consideration, however. Accordingly, after giving both parties an opportunity to argue for whatever sentence they deem appropriate, the district judge should then consider all of

4

>
> the §3553(a) factors to determine whether they support the sentence requested by a party. In so doing, he may not presume that the Guidelines range is reasonable. He must make an individualized assessment based on the facts presented. If he decides that an outside-Guidelines sentence is warranted, he must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance. We find it uncontroversial that a major departure should be supported by a more significant justification than a minor one. After settling on the appropriate sentence, he must adequately explain the chosen sentence to allow for meaningful appellate review and to promote the perception of fair sentencing.

*128 S. Ct. at 596-597* (internal citations and quotations omitted).

While the First Circuit has noted that sentencing courts must employ "an increased degree of justification commensurate with an increased degree of variance", from the advisory sentencing guideline range, it has also held that under a post-*Gall* rubric, "there is no stringent mathematical formula that cabins the exercise of the sentencing court's discretion." *United States v, Martin, 520 F.3d 87 (1st Cir. 2008).* Indeed, after *Gall*, the sentencing inquiry-once the court has duly calculated the GSR-ideally is broad, open-ended, and significantly discretionary. At that point, sentencing becomes a judgment call, and a variant sentence may be constructed based on a complex of factors whose interplay and precise weight cannot even be precisely described." *Id. At 91-92* (internal citations and quotations omitted) (affirming a 91-month downward deviation from the advisory sentencing guideline range).

### III.  CONCLUSION

The Defendant plead guilty to these offenses on May 13, 2016 under Rule 11 with a binding plea agreement.  It calls for 18 months of incarceration followed by three years of supervised release.  Bienvenido has spent 9 months and 10 days in custody prior to this date.  He is requesting that this court sentence him to the agreed upon sentence and three years of supervised release.  Bienvenido has, from the beginning, taken responsibility for his actions.  To the extent

possible he has been dealing with the problems that caused this behavior.  He understands that any further criminal conduct will likely result in extremely long and severe punishment.  He is intensely committed to surviving his incarceration and rejoining society to reunite and become a productive father. Supervised release after confinement will not be without challenges.

Given his prospects for rehabilitation, a high degree of certainty that he will not re-offend, his lack of dangerousness to the community Bienvenido would respectfully request this Court accept the agreed recommendation contained within the binding plea agreement.

>Respectfully submitted,
>BIENVENIDO NUNEZ
>By and through his attorney,
>
> /s/ Charles E. Dolan
>Charles E. Dolan, BBO#546344
>Raipher D. Pellegrino, Associates, PC
>265 State Street
>Springfield, Massachusetts 01103
>Tel.:   (413) 746-4400
>Fax:   (413) 746-2816
>ced@rdpalaw.com

**Certificate of Service**

I, Charles E. Dolan, hereby certify that on this the 15th  day of August, 2016, I have served all parties of record registered with ECF for this matter with a true copy of the foregoing motion by virtue of transmitting the same to the Court via the CM/ECF system.

> /s/ Charles E. Dolan
>Charles E. Dolan